IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DOUGLAS CORTEZ and REVEREND NELL ARCHER, on behalf of themselves and all others similarly situated, *Plaintiffs*, v. UNITED STATES OF AMERICA, *Defendant*. | Case No. 2:24-CV-7532 (JMA/ARL) FIRST AMENDED CLASS ACTION COMPLAINT |

## INTRODUCTION

This is a class action alleging that Immigration and Customs Enforcement has broken its promise to thousands of people who put up their hard-earned money to keep their loved ones out of detention and, having upheld their end of the bargain, are entitled to get their money back.

When noncitizens facing the possibility of removal are detained by ICE, they may be released from custody pending removal proceedings if they are not a flight risk or a danger to the community. They do so by posting a bond, which is designed to ensure that they show up when requested. This bond is typically thousands of dollars and, in most cases, is posted in cash or its equivalent by a friend, family member, or member of the community. When this happens, the individual putting up the money—known in legal parlance as the "cash obligor"—forms a written contract with ICE. The cash obligor agrees to pay the amount of the bond, and the detained individual is then released from custody on the condition that they appear when called upon. If that condition is satisfied through the end of the individual's removal proceedings, the bond is cancelled, and ICE must then return the money to the obligor, plus interest.

That, at least, is how it's supposed to work. But in a huge number of cases, ICE has failed to live up to its end of the bargain. Tens of thousands of people—many of whom come from low-

1

wage immigrant families—have not received the money that they are owed under their contracts. Even though their bonds have all experienced a "cancellation event," as defined in the contract—for example, the dismissal of the bonded individual's removal proceedings—and even though the bonds are thus supposed to be cancelled and returned to them, ICE hasn't given them their money back. It has failed to fulfill its contractual duty to cancel bonds, to notify obligors that their bonds have been cancelled, and, ultimately, to pay obligors the money that they are owed. As a result, the federal government has retained hundreds of millions of dollars to which it is not entitled.

This case seeks to change that. It is brought by Reverand Nell Archer and Douglas Cortez, two of the many people who posted a bond with ICE and whose bond experienced a cancellation event under the terms of the bond contract. They were therefore contractually entitled to have their bonds cancelled, to receive notice of the cancellation, and, most importantly, to have their cash deposits returned. Yet, as of the time that this suit was filed, that had not happened. On behalf of themselves and a nationwide class of those similarly situated, they ask this Court to determine that ICE has breached its contracts with the class and to award damages for the amounts owed.

## JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and the Little Tucker Act, which waives sovereign immunity and provides jurisdiction in district court over any "claim against the United States, not exceeding $10,000 in amount, founded … upon any express or implied contract with the United States." 28 U.S.C. § 1346(a)(2). The named plaintiffs have individual breach-of-contract claims against the United States, and, to the extent that their claims exceeds $10,000 or may exceed $10,000 while this litigation is pending, they waive their right to seek damages in excess of $10,000 per claim.

2. This Court has personal jurisdiction over all parties to this lawsuit, and venue is proper under 28 U.S.C. § 1391 and 28 U.S.C. § 1402(a).

**PARTIES**

3. Reverend Nell Archer is a resident of Carroll Gardens, New York. She has served as an Episcopal priest for over fifteen years. She currently serves as the Vicar of Bushwick Abbey and of Iglesia de la Santa Cruz, a Spanish-speaking Episcopal congregation with many first-generation immigrants and their children. Reverend Archer has witnessed firsthand the risks and challenges these families face. Her faith compels her to help those in need, regardless of their immigration status, rooted in the fundamental biblical principle of welcoming the stranger. This has shaped her ministry, including working alongside her congregation in response to immigration-related challenges.

4. On December 15, 2017, while volunteering with a faith-based immigrant advocacy organization, Reverend Archer signed a contract with ICE and posted a bond for $2,500 so that a noncitizen would be released from detention during the pendency of their removal proceedings. The noncitizen complied with the conditions of the bond throughout the pendency of the removal proceedings, and on June 14, 2022, those proceedings were dismissed. Because dismissal is a cancellation event under the terms of the bond contract, ICE should have canceled the bond at that time, and Reverend Archer should have received notice of the cancellation and been refunded the $2,500 cash deposit, plus interest.

5. That has not happened. More than two years later, Reverend Archer still has not received her money back. She does not know whether her bond has been cancelled by ICE or whether ICE has taken any steps to send her notice of the cancellation. She has not received notice of the cancellation from ICE (despite remaining at the same address that she listed in the bond contract). Nor has she obtained any of the refund that she is owed under the bond contract she signed.

6. Douglas Cortez is a resident of Uniondale, New York. In November 2013, he signed a contract with ICE and posted a bond in the amount of $10,000 so that a friend would be released from detention during the pendency of their removal proceedings. The friend complied with the conditions of the bond throughout the pendency of the removal proceedings, and in August 2023, those proceedings were dismissed. Because dismissal is a cancellation event under the terms of the bond contract, the bond should have been cancelled by ICE at that time, and Mr. Cortez should have received notice of the cancellation and been refunded the $10,000 cash deposit, plus interest.

7. As of the date this suit was filed, that had not happened. More than one year after the bond should have been cancelled, Mr. Cortez still had not received his money back. He did not know whether his bond had been cancelled by ICE or whether ICE had taken any steps to send him notice of the cancellation. He had not received notice of the cancellation from ICE (despite remaining at the same address that he listed in the bond contract). Nor had he obtained any of the refund that he was owed under the bond contract that he signed.

8. Defendant United States of America—through ICE, the Department of Homeland Security, and the Department of the Treasury—administers the immigration-bond system, enters into bond contracts with obligors, collects and retains bond funds, and is responsible for returning bond funds when required by law.

**FACTUAL ALLEGATIONS**

*How delivery bonds are supposed to work: The basic bargain*

9. This case involves the most common form of immigration bonds, known as delivery bonds. Delivery bonds are intended to function like criminal bail bonds. They allow noncitizens detained by ICE to be released from custody pending completion of their removal proceedings if they are not a flight risk or a danger to the community. The amount that must be posted for each bond is substantial—about $6,000 on average—and is often paid in cash by a friend, family

4

member, or member of the community. *See* TRAC Immigration, *Immigrants Pay $2 Billion in ICE Bonds Since FY 2017*, Feb. 8, 2024, https://perma.cc/3NXW-LZNZ. These "cash obligors," as they are called, make a basic pact with the government: They agree to pay the amount of the bond, and the detained individual is then released from custody on the condition that they appear when requested. If that condition is satisfied through the end of the removal proceedings, the bond is then cancelled and the government must return the money, plus interest, to the obligor.

10. This agreement is memorialized in the written contract that ICE forms with each obligor when the bond is posted. Right at the top, it makes clear that the "bond is posted as security for performance and fulfillment of the bonded [individual's] obligations to the government." ICE Form I-352, at 1, https://perma.cc/U948-PAR9. The obligor "guarantees the performance of the conditions of the bond"—a guaranty "secured by the amount of the bond." *Id.*

11. The contract spells out exactly when those conditions are satisfied. "Cancellation of a bond," it says, "shall occur upon any of [certain specified] events, provided that the event occurs prior to the date of a breach." *Id.* at 2. These include the following: (1) "ICE taking the [noncitizen] back into its custody"; (2) "deportation/exclusion/removal of a bonded [individual]"; (3) "grant of permanent residence to the bonded [individual]"; and (4) "termination of deportation/removal proceedings (but not administrative closure or stay of such proceedings)," *id.*, which encompasses proceedings that are "finally terminated," *id.* at 4, because, for example, the bonded individual is granted some form of relief from removal, like asylum, or the removal proceedings are dismissed under 8 C.F.R. § 1239.2(c). "Cancellation for these reasons is automatic, and any subsequent appearance demand, or attempt to breach the bond, is null and void." ICE Form I-352, at 2.

12. Under the contract's plain terms, then, a cancellation event automatically triggers cancellation of the bond. Cancellation, in turn, triggers an obligation by ICE to notify the obligor that the bond has been cancelled and to return the amount of the bond, plus applicable interest,

5

to the obligor. The contract provides that "ICE shall notify the obligor" of the "cancellation of a bond" (which it does by issuing something called a Form I-391) and that, "if the bond is cancelled upon issuance of Form I-391, 'Notice - Immigration Bond Cancelled,' ICE will refund the cash deposit and applicable interest to the obligor at the address on file." *Id.* at 1, 2.

### *How delivery bonds work in reality: ICE's failure to fulfill its end of the bargain*

13. For tens of thousands of obligors, however, ICE has not refunded the money that they are owed by contract. ICE has not cancelled bonds upon the occurrence of a cancellation event. To the contrary, it has failed to cancel bonds following a cancellation event on thousands of occasions. Nor has ICE ensured that obligors actually receive notice when a bond is cancelled. Rather than notify obligors via certified mail, as it does with demand notices, or via email, ICE chose to send cancellation notices only via regular mail—while also routinely failing to send such notice. *See* 2014 Bond Management Handbook 10–11 & App. 14. And even when obligors have received notice, ICE has made it difficult for them to get their money back, previously demanding that they "forward the original Form I-305" before receiving a refund, *id.* at 10—a form that was unmentioned in the contract, and that many obligors presumably lacked access to or did not retain for the years that typically elapse between the posting of a bond and the conclusion of proceedings. Add it all up, and ICE has failed to fulfill its contractual obligation to refund cash deposits to obligors following cancellation events in a significant percentage of cases. *See* Flynn, *ICE is holding $204 million in bond money, and some immigrants might never get it back*, Wash. Post, Apr. 26, 2019, https://perma.cc/B79X-Y2YQ.

14. The extent of ICE's failure has been confirmed by extensive investigative reporting, publicly available bond data, information obtained through public-records requests and litigation, and a two-year investigation by counsel in anticipation of filing this action. Counsel's investigation has revealed that ICE has routinely failed to refund cash deposits even long after a cancellation

6

event has occurred, failing to do so about a quarter of the time. It has also revealed that, because of ICE's systemic failure, the United States has retained over $300 million that is currently owed to people who have satisfied the contractual criteria for receiving a refund. More than $240 million of that amount has been owed for so long that it has been transferred to ICE's unclaimed-funds account with the U.S. Treasury Department—an account that is comprised almost entirely of cancelled bonds that were not paid out, and that is the largest unclaimed-funds Treasury account of any federal agency. *See Report of Unclaimed Money*, https://perma.cc/X9L3-88CJ; *see also* Flynn, *ICE is holding $204 million in bond money*. And the account is only continuing to balloon at a rate of approximately $10 million dollars per year. Making matters worse, ICE (unlike several other agencies) has no mechanism to allow obligors to search its massive unclaimed-funds account, which would allow them to figure out whether ICE is holding money to which they are owed.

## CLASS ACTION ALLEGATIONS

15. The plaintiffs bring this class action under Federal Rule of Civil Procedure 23(b)(3).

16. The plaintiffs seek certification of the following class:

All individuals and entities who posted a cash delivery bond with ICE and have not received a return of their cash deposit, where the bond experienced a cancellation event and was not breached prior to that event, and where the total amount of the bond plus applicable interest does not exceed $10,000 while the litigation is pending (unless the individual or entity expressly waives any right to receive damages in excess of $10,000 with respect to that bond).

A cancellation event is defined as any of the following: ICE taking the bonded individual back into its custody; deportation/exclusion/removal of the bonded individual; grant of permanent residence to the bonded individual; or termination of deportation/removal proceedings (but not administrative closure or stay of such proceedings).

17. The class is so numerous that joinder of all members is impractical. While the exact number and identity of class members is unknown to the plaintiffs at this time and can only be determined through appropriate discovery, the plaintiffs believe that there are tens of thousands of class members based on information obtained through public-records requests and other publicly

7

available information. The precise number and identification of the class members will be ascertainable from the government's records.

18.  There are questions of law and fact common to all members of the class. Those common questions include, but are not limited to, the following:

(i)  Does ICE have a contractual obligation to refund the cash deposit that has been posted by a cash obligor, plus applicable interest, when there is a cancellation event and the bond has not been breached prior to that event?

(ii)  Does ICE breach that contractual obligation when it fails to provide a refund of the cash deposit, plus applicable interest, to the obligor who paid that deposit?

(iii)  Does ICE have a contractual obligation to provide reasonable notice to the obligor that a delivery bond has been cancelled?

(iv)  Do ICE's notification procedures violate that contractual obligation?

19.  The plaintiffs' claims are typical of the class claims because they, like the class members, posted cash delivery bonds with ICE and at the time of suit had not received a return of their cash deposit even though the bond experienced a cancellation event and had not been breached prior to that event.

20.  The plaintiffs will fairly and adequately protect the interests of the class because their interests do not conflict with the interests of the class, and they have obtained counsel experienced in litigating class actions and matters involving similar or the same questions of law.

21.  The questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating class members' claims. Joinder of all members is impracticable. Furthermore, because the injury suffered by the individual class members may be relatively small compared to the costs of obtaining counsel, the expense and burden of individual

litigation make it impossible for members of the class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

### CLAIM FOR RELIEF: BREACH OF CONTRACT

22. As noted earlier, the plaintiffs bring this case under the Little Tucker Act, 28 U.S.C. § 1346(a), which waives sovereign immunity and provides jurisdiction in district court over any breach-of-contract claim brought against the United States that does not exceed $10,000.

23. Here, the United States breached its contractual obligations to the plaintiffs and the class. It is contractually required to cancel delivery bonds upon the occurrence of a cancellation event, to provide reasonable notice to the obligor of the bond's cancellation, and to return the cash deposit to the obligor, plus interest. It has failed to comply with its obligations. Rather than return the money owed, the defendant has retained the cash deposits and interest. In the past, ICE has even insisted on additional documentation unmentioned in the contract (the I-305). However, on information and belief, ICE now recognizes that this additional documentation is not required for the obligor to receive the money they are owed.

24. The plaintiffs and the class are entitled to a monetary award for their cash deposits, plus applicable interest, under their contracts with the defendant. As of the date of the filing of this suit, that had not happened.

### PRAYER FOR RELIEF

The plaintiffs request that the Court:

a. Certify this action as a class action under Federal Rule of Civil Procedure 23(b)(3);

b. Declare that ICE has violated its bond contracts with the plaintiffs and the class;

c. Award monetary relief for any cash deposits paid by the plaintiffs and the class, plus applicable interest, that are found to be owed by ICE under the bond contracts based on a cancellation event;

d.  Award the plaintiffs and the class their costs, expenses, and attorney fees under Rule 23(h), 28 U.S.C. § 2412, and/or from a common fund; and

e.  Award all other appropriate relief.

Dated: March 13, 2025                    Respectfully submitted,

By: */s/ F. Franklin Amanat*

MOTLEY RICE LLC

Peter L. Markowitz
Bar No. PM9052
458 Hancock Street
Brooklyn, NY 11233
Tel. (718) 877-8817
*markowitz.peter@gmail.com*

Mauricio E. Noroña
Bar. No. MN6621
37-34 85th Street Apt. 1
Jackson Heights, NY 11372
Tel. (347) 891-3548
*mauricioenorona@gmail.com*

F. Franklin Amanat
Bar No. FA6117
800 Third Avenue, Suite 2401
New York, NY 10022
Tel. (212) 577-0052
*famanat@motleyrice.com*

William H. Narwold
Bar No. WN1713
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103
Tel. (860) 882-1676
*bnarwold@motleyrice.com*

Meghan S. B. Oliver*
Charlotte E. Loper*
Ranee Saunders*
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Tel. (843) 216-9000
*moliver@motleyrice.com*
*cloper@motleyrice.com*
*rsaunders@motleyrice.com*

GUPTA WESSLER LLP

Deepak Gupta*
Jonathan E. Taylor*
Thomas Scott-Railton**
2001 K Street NW
North Tower, Suite 850

            Washington, DC 20006
            Tel. (202) 888-1741
            *deepak@guptawessler.com*
            *jon@guptawessler.com*
            *thomas@guptawessler.com*

            *Attorneys for the plaintiffs and the putative class*

\* *pro hac vice application forthcoming*
\*\* *pro hac vice application forthcoming; admitted in New York, practicing under direct supervision of members of the District of Columbia Bar under Rule 49(c)(8).*