

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

*610 Federal Plaza*
*Central Islip, New York 11722*

July 17, 2025

By ECF

Honorable Joan M. Azrack
United States District Judge
Eastern District of New York
100 Federal Plaza—Courtroom 920
Central Islip, New York 11722

Re: *Cortez v. United States of America*, 2:24-cv-7532 (JMA)(ARL)

Dear Judge Azrack:

On behalf of defendant, the United States of America ("Defendant"), I write to provide Your Honor with a status report of issues implicated by Plaintiff Douglas Cortez's ("Plaintiff") purported class action complaint, Docket Entry No. 1 (the "Complaint"), in advance of the pre-motion telephonic conference currently scheduled for July 22, 2025 at 3:00 p.m. The government respectfully proposes that a stay or an adjournment of the conference and a further progress report in four months is warranted, as set forth further below.

**Background**

On October 29, 2024, Plaintiff filed the Complaint on behalf of himself and all others similarly situated generally alleging that U.S. Immigration and Customs Enforcement ("ICE") has routinely failed to timely cancel cash bonds and unreasonably delayed the reimbursement of funds posted by cash bond obligors. Specifically, Plaintiff alleges that he posted a $10,000 cash bond with ICE so that an associate would be released from detention during the pendency of the latter's removal proceedings. Complaint ¶ 3. According to Plaintiff, by posting this cash bond, he—and other similarly situated "cash obligors"— make a basic pact with the government:

> They agree to pay the amount of the bond, and the detained individual is then released from custody on the condition that they appear when requested. If that condition is satisfied through the end of the removal proceedings, the bond is then cancelled and the government must return the money, plus interest, to the obligor.

*Id.* ¶ 6. The specific terms and conditions associated with Plaintiff's posted bond are set forth in the attached ICE Form I-352 ("Form I-352"). Ex. A. As set forth therein, by posting the bond, Plaintiff "guarantee[d] the performance of the conditions of the bond," which was "posted as security for performance and fulfillment of the bonded alien's obligations to the government." *Id.*

at p. 1, ¶ 1. The Form I-352 sets forth that a bond is cancelled upon the occurrence of enumerated events, such as, *inter alia*, the grant of permanent residence to, the deportation/exclusion/removal of, or the termination of deportation/removal proceedings related to, the bonded alien. *Id*. at 2, ¶ 3. Cancellation for any of the reasons enumerated in the Form I-352 "is automatic", and ICE "shall notify the obligor . . . of a . . . cancellation of a bond[.]" *Id.* at 2, ¶¶ 3-4. Notice of bond cancellation sent to the obligor "is sufficient to trigger the duties and obligations under th[e] bond." *Id.* at 2 ¶ 4.

There is no time period specified in the Form I-352 for ICE to either notify an obligor of the cancellation of a bond or return a bond deposit with applicable interest.[1] *See generally* Ex. A. Additionally, monies cannot be returned to individuals who, *inter alia*, have moved without notifying ICE of a new address, owe debts to the federal government (*i.e.* taxes), or otherwise are not amenable to repayment (*i.e.* death of an obligor without notifying ICE of heir(s)).

Plaintiff asserts one claim under the Little Tucker Act, 28 U.S.C. § 1346(a)(2), contending that ICE failed to comply with its contractual obligations to timely notify him of the cancellation of his bond in August 2023 and return his $10,000 cash deposit with applicable interest.[2] Complaint ¶¶ 3, 20. Plaintiff requests that the Court "[d]eclare that ICE is in violation of its bond contracts" with Plaintiff—and those similarly situated—and "award monetary relief for any cash deposits paid by the plaintiff and the purported class,[3] plus applicable interest, that are found to be owed by ICE under the bond contracts based on a cancellation event". *Id.* at Prayer for Relief, ¶¶ b, c.

By letter dated February 3, 2025, Defendant sought a pre-motion conference in connection with its proposed motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. Docket Entry No. 17. Plaintiff relies on the Little Tucker Act to provide the requisite basis for jurisdiction, Complaint ¶¶ 1, 19, and as set forth in the February 3 letter, that limited waiver of sovereign immunity does not authorize the district court to grant specific performance against the United States. *See generally Price v. U.S. General Services Admin.*, 894

---

[1] Applicable interested is computed from "the deposit date to and including the refund date". 8 C.F.R. § 293.1. The deposit date is the date shown on the receipt for the cash received as security on a bond, and the refund date is the "date upon which the interest is certified to the Treasury Department for payment." *Id.*

[2] On November 4, 2024, ICE issued a cancellation notice to Plaintiff and on November 6, 2024, a check was issued to Plaintiff for $11,813.37 (Plaintiff's $10,000 cash bond deposit, plus applicable interest).

[3] While Plaintiff has styled his complaint as a class action, a class cannot be certified here, as there is no commonality of facts among prospective class members' circumstances. Indeed, determination of whether ICE breached its bond obligations is a highly fact specific inquiry that would require a "mini trial" to analyze the individual circumstances in each case (*i.e.* whether the passage of time between cancellation event and reimbursement is unreasonable, the reason(s) reimbursement was not issued, the procedural status of each case, whether there is an indicia of obligor fraud, and/or the amount of the bond (this Court has no jurisdiction to adjudicate contract claims over $10,000 under the Little Tucker Act)).

F.2d 323, 324 (9th Cir. 1990); *see also Bowen v. Massachusetts*, 487 U.S. 879, 893-94 (1988). In a case seeking an order compelling a party to perform its contractual or statutory obligations, even if a judicial remedy may require one party to pay money to another, such relief seeks specific performance of a party's legal/contractual obligations. Thus, here, specific performance is precisely the type of relief Plaintiff seeks: an order compelling ICE to satisfy its contractual obligations "to have his bond cancelled, to receive notice of the cancellation, and, most importantly, to have his cash deposit returned to him." Complaint at p. 2. This Little Tucker Act suit warrants dismissal for lack of subject matter jurisdiction, as set forth in greater detail in Defendant's pre-motion conference letter. Docket Entry No. 17.

**This Litigation Should Be Stayed To Allow ICE To Complete Its Independent, Ongoing Efforts To Clear A Backlog Of Cash Bonds, The Very Relief Sought By Plaintiff**

There was an exponential rise in pending immigration proceedings between 2020 (approximately 1.5 million) and 2024 (approximately 3.9 million). *See* https://www.justice.gov/eoir/media/1344791/dl?inline (last visited July 17, 2025). Contrary to Plaintiff's allegations, during that time, ICE remained diligent in addressing the compounding issues that arose in all these matters. Indeed, in matters involving cash bonds, ICE estimates that, between 2020 and 2024, it issued reimbursements to approximately 100,000 cash bond obligors in a gross amount of approximately $750 million.

Given, *inter alia*, the exponential rise in pending immigration matters, however, ICE was not able to keep up with all of the concomitant administrative tasks that arose. As a result, a backlog formed of approximately 21,000 cases in which a cash bond may have been subject to cancellation (the "Backlog Cases"). To be clear, this group is overbroad as not all of these are instances warrant cancellation, upon review.[4] Moreover, of these, approximately 9,400 matters involve a very recent potential cancellation event that occurred in 2024.

With support and resources provided by current leadership, over the last six months ICE has been working diligently to clear the Backlog Cases by, where appropriate, cancelling cash bonds and issuing refunds. Indeed, over that time, ICE has reviewed approximately 90% of the Backlog Cases and, of those deemed qualified for cancellation, issued reimbursements in approximately 92%. ICE aims to maintain its current rate of review and, where appropriate, cancel/reimburse the majority of the remaining of the Backlog Cases over the next few months.

Inasmuch as the relief Plaintiff is seeking – which this Court lacks jurisdiction to provide – is being provided by ICE on its own, ICE respectfully proposes that the most efficient path forward, that wastes the least resources of both parties and the Court, is for this litigation to be stayed pending the completion of that process or, alternatively for the forthcoming conference to be adjourned and for the government to file a status report in four months on the further progress

---

[4] Not all Backlog Cases that are reviewed warrant cancellation and reimbursement. A careful review of the status of each proceeding involved in the Backlog Cases is necessary because, while a cancellation event may appear to have occurred, ICE has found that, in approximately 6% of cases reviewed, cancellation is not appropriate due to various circumstances in the case including, *inter alia*, ongoing proceedings, appeals, administrative closures, or stays.

in clearing the Backlog Cases. ICE has been working to solve this inefficiency and issue refunds (with interest) to obligors in those Backlog Cases that were found to warrant reimbursement. Under these circumstances—particularly where no class has been certified—a stay of these proceedings, including motion practice and discovery, would allow ICE to continue to address the remainder of the Backlog Cases most efficiently without having to divert personnel and resources to address issues in this litigation. Equally as important, a stay would serve to avoid burdening the Court with unnecessary motion practice. In the alternative, Defendant proposes adjourning the forthcoming July 22, 2025 conference *sine die*, and for Defendant to file a status report in four months, on November 18, 2025 with an update on ICE's further, ongoing progress as to the Backlog Cases.

In the event that the Court is not inclined to stay the matter or to await an updated status report with ICE's ongoing progress, ICE respectfully proposes that a mediation may be a helpful path forward.

Thank you for your consideration of this matter.

Respectfully Submitted,

JOSEPH NOCELLA JR.
United States Attorney

By:          /s/
ROBERT W. SCHUMACHER
Assistant United States Attorney
(631) 715-7871

cc:  F. Franklin Amanat, Esq. (via ECF)