

800 Third Ave., Suite 2401
New York, NY 10022
**o.** 212.577.0052  **f.** 212.577.0054

**F. Franklin Amanat**
*Licensed in NY, NJ, DC, CT*
direct: 212.577.0052
famanat@motleyrice.com

www.motleyrice.com

"I will stand for my client's rights.
I am a trial lawyer."
–Ron Motley (1944–2013)

July 21, 2025

<u>**BY ECF ONLY**</u>

Honorable Joan M. Azrack
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

   *Re*:  *Cortez v. United States*, No. 2:24-CV-7532 (JMA/ARL)

Dear Judge Azrack:

  In advance of the premotion conference currently scheduled for this coming Tuesday July 22, named plaintiff Douglas Cortez respectfully submits the following information in response to ICE's July 17 status report, ECF No. 31.

  **1.** Mr. Cortez filed this suit almost nine months ago on behalf of thousands of people who put up hard-earned money to keep loved ones, friends, and community members out of immigration detention. These people entered into written contracts with U.S. Immigration and Customs Enforcement agreeing to post a bond ensuring that an individual in immigration proceedings would appear when requested. In exchange, ICE agreed that, if the bond conditions were satisfied through the end of the individual's removal proceedings, then the bond would be canceled, and the money would be returned to the person who paid it (the cash obligor), plus interest. *See* ECF No. 17-1 at 2; ECF No. 1 ¶¶ 8–9. The individuals appeared as required throughout their immigration removal proceedings. ICE, however, failed to live up to its end of the bargain. In thousands of cases, ICE failed to cancel and refund bonds even after the proceedings had ended and the bond conditions had been fully satisfied, illegally retaining hundreds of millions of dollars.

  To remedy these violations, Cortez sued under the statute authorizing contract claims for monetary relief against the United States: the Little Tucker Act. The plaintiffs explained that ICE had breached its contractual duties to the class in multiple ways: (1) ICE failed to cancel bonds after removal proceedings had ended; (2) even when ICE did cancel bonds, it systematically provided insufficient notice of cancellation to obligors, which meant they didn't get their money back; and (3) at various times, ICE refused to repay obligors unless they provided the original of a form that is not required by the contract. ECF No. 1 ¶¶ 10–11, 15.

  On February 3, 2025, ICE filed a pre-motion letter stating its intent to file a motion to dismiss for lack of jurisdiction under the Little Tucker Act. ECF No. 17. The plaintiffs filed a response on February 14. ECF No. 20.



**2.** On July 17, however, ICE filed an additional status report detailing certain remedial steps it represents that it has taken. ICE now acknowledges that it failed to cancel and repay thousands of bonds. ECF No. 31 at 3. Yet ICE does not purport to have even begun to remedy its failings with regard to the large group of class members as to whom the bond *was* canceled but who were still not paid back. This includes, at a minimum, (i) obligors who never received adequate notice of the cancellation and, (ii) obligors who were unable to submit upon demand an original copy of a form executed at bond initiation, which ICE now concedes is unnecessary to trigger payment, and which the contract does not mention as a requirement for payment.

Moreover, even as to the limited category of class members to whom this lawsuit has prompted ICE to pay back their bond money, it remains unclear whether the agency's efforts are adequate. To take just one example, from ICE's status report, it appears that it may have only reviewed bonds that it failed to cancel during the four years of the Biden Administration. *Id.*

Over a month before filing this status report, ICE had reached out to the plaintiffs related to the steps that ICE has now publicly disclosed in its letter. Soon thereafter, on June 11, the plaintiffs sent ICE a detailed letter asking for additional information and clarification. In the following month, ICE never responded to these questions, precluding the plaintiffs from evaluating the relevance of ICE's purported remedial actions to this case. Instead, ICE filed a status report that similarly leaves unaddressed the very questions that the plaintiffs already raised.

**3.** None of this warrants further delaying this case. Even on ICE's own description of the remedial steps it has taken in response to this litigation, ICE has done nothing to address several of the plaintiffs' claims and is not offering complete relief for the class. Given the lack of clarity about what ICE has done and is doing, proceeding to discovery is warranted.

As to ICE's potential motion to dismiss for lack of jurisdiction under the Little Tucker Act, if ICE still intends to move to dismiss on this basis, then it would be appropriate for this Court to set a briefing schedule for ICE's motion. It is worth noting, however, that ICE's jurisdictional argument now directly conflicts with recent Supreme Court precedent and arguments that the Solicitor General of the United States successfully pressed to the Supreme Court.

ICE's status report repeats its argument that paying the plaintiffs back the money they are owed amounts to specific performance, and that the Little Tucker Act "does not authorize the district court to grant specific performance against the United States." ECF 31 at 2–3. This argument was already incorrect at the time of the plaintiffs' premotion response, as Little Tucker Act jurisdiction expressly extends to claims for under $10,000 that are "founded ... upon any express or implied contract with the United States." ECF 20 at 1–3 (quoting 28 U.S.C. § 1346(a)(2)).

Since then, the Supreme Court has agreed with the plaintiffs. The Court recently held that a suit "to enforce a contractual obligation to pay money" falls under the Tucker Act, because it grants "jurisdiction over suits based on 'any express or implied contract with the United States.'" *Dep't of*



*Educ. v. California*, 604 U.S. ---, 145 S. Ct. 966, 968 (Apr. 4, 2025) (quoting 28 U.S.C. § 1491(a)(1)).[1] The Supreme Court so held at the urging of the Solicitor General, who made the opposite argument to the one ICE now presses before this Court—arguing that Tucker Act jurisdiction applies to "a claim for the classic contractual remedy of specific performance," in the form of payment of money under a contract. Appl. to Vacate at 17, *Dep't of Educ.*, 145 S. Ct. 966 (Mar. 2025) (No. 24A910), 2025 WL 945313, at *17.

If, notwithstanding the above, ICE plans to move to dismiss for lack of jurisdiction, the conflict between ICE's position and recent Supreme Court precedent only further points in favor of proceeding to discovery without further delaying the case while ICE's motion is pending.[2]

We appreciate the Court's time and attention to this matter.

Respectfully submitted,

F. Franklin Amanat
Motley Rice LLC
*Counsel for Plaintiff*

cc (by ECF notification and courtesy email):
    AUSA Robert W. Schumacher, II
    All counsel of record

---

[1] *Department of Education* involved the Tucker Act, a parallel statute providing that the Court of Federal Claims shall have exclusive jurisdiction over breach-of-contract actions seeking *more* than $10,000 per claim. 28 U.S.C § 1491(a)(1). The jurisdictional language in the Tucker Act is virtually identical to the Little Tucker Act, and courts often address jurisdiction under the two statutes in tandem. *See, e.g., United States v. Bormes*, 568 U.S. 6, 10 & n.2 (2012); *Gonzales & Gonzales Bonds & Ins. Agency v. Dep't of Homeland Sec.*, 490 F.3d 940, 943–45 (Fed. Cir. 2007).

[2] The Government argues in a footnote that a class cannot be certified here based on a lack of commonality among prospective class members' circumstances. ECF No. 31 at 2 n.3. That question is premature, but to the extent it is relevant to the discussion at the premotion conference, ICE is incorrect. The plaintiffs are challenging uniform practices, including requiring unnecessary paperwork and failing to send proper notice of cancellation. These present common questions of law and fact. The fact that different obligors may be entitled to different sums of money at the end of the case is no bar to a class action. *See, e.g., Guippone v. BH S&B Holdings LLC*, 2011 WL 1345041, at *5 (S.D.N.Y. 2011). What is more, ICE was able to generate a list of cases from its own records and, even on its own account, found that the vast majority were owed repayment. ECF No. 31 at 3 & n.4. This undercuts ICE's claim that resolution would require full-blown "mini-trials" for each class member and would instead support the argument that this dispute is resolvable through standardized class procedures.