UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DOUGLAS CORTEZ, on behalf of himself
and all others similarly situated,

               Plaintiff,

     -against-

UNITED STATES OF AMERICA,

               Defendant.

Case No. 2:24-cv-7532 (JMA)(ARL)

### DECLARATION OF PATRICK H. ELLIOTT

I, PATRICK H. ELLIOTT, hereby declare:

1.      I am currently employed as a Section Chief in the office of the National Bond and Case Management Unit—Bond Management Unit ("BMU") at U.S. Immigration and Customs Enforcement ("ICE"), a component within the U.S. Department of Homeland Security ("DHS"). I have served in this capacity since April 6, 2025 and have been employed by ICE since October 14, 2008. Prior to becoming a Section Chief, my title was Detention and Deportation Officer, a position I held since March 2021.

2.      I submit this Declaration in the above-captioned action in my official capacity as a Section Chief of BMU at ICE.  As part of my position as Section Chief of BMU (and as a Detention and Deportation Officer before that), I am familiar with certain ICE procedures relating to cash bonds.

3.      The statements contained in this declaration are based upon my personal knowledge and experience, my review of hardcopy and electronic records, systems, and databases maintained by DHS in the ordinary course of business, information provided to me in my official capacity and

in the performance of my official duties, consultation with my colleagues, and upon conclusions and determinations made in accordance therewith.

**Immigration Bond Overview**

4.    The immigration bond program performs a critical role in efficiently administering the United States' immigration laws. The majority of bonds issued by ICE are secured by cash or a cash equivalent (*i.e.*, money orders, cashier's checks, or U.S. bonds/notes) (hereinafter collectively referred to as "cash bond(s)"). If a cash bond's conditions are met, then the bond is cancelled and the cash deposit is refunded to the obligor with applicable statutory interest. If the cash bond's conditions are not met, then the bond is breached and ICE retains the cash deposit.

5.    Three different entities within ICE – the BMU, Enforcement and Removal Operations ("ERO") Field Offices, and the ICE Financial Service Center-Burlington ("FSC-B") – are involved with cash bond management.

6.    The BMU supports field operations by providing guidance related to immigration bond management and cash bond processes and procedures.

7.    ERO employees in the approximately 25 field offices and 179 sub-offices issue cash bonds and process cash bond paperwork. ERO employees also review immigration cases to ensure cash bond compliance and, where appropriate, issue Form I-391 Notices of Immigration Bond Canceled ("Cancellation Notice(s)").

8.    Upon being notified that a Cancellation Notice has been issued, FSC-B employees are responsible for conducting a review of the cash bond cancellation and, where appropriate, authorizing the reimbursement of cash bond amounts (plus statutory interest) back to the obligor.

**ERO Immigration Bond Cancellation Process**

9.      Depending on the terms and conditions of the cash bond, the events that cancel a cash bond if they occur prior to a breach may include:

- Death of the alien;
- ICE taking the alien back into its custody;
- Removal of the alien;
- Grant of permanent residence or citizenship to the alien;
- ICE's receipt of notice that the alien has been taken into custody by another federal, state, or local law enforcement agency and detained for more than thirty (30) days;
- Termination of removal proceedings; and
- Voluntary departure of the alien.

10.      ERO employees manually review cases on their assigned dockets for bond compliance, including cancellation or breach. ERO employees may be prompted to review a specific case for a number of reasons, including through a DHS database, a criminal and immigration history review, or from contact by an alien or his or her representative (*i.e.*, attorney, family, or obligor).

11.      Once a case is identified where a potential cancellation event may have occurred, ERO employees review the relevant alien file ("A-file") and certain databases to confirm whether cancellation is appropriate. In most cases, ERO employees can confirm the cancellation event by reviewing the procedural status of an alien's case at an applicable Immigration Court.

12.      Once ERO employees confirm a cancellation event has occurred, they mail a Cancellation Notice to an obligor at his or her last known address. The Cancellation Notice reads in part:

> U.S. Immigration and Customs Enforcement (ICE) has determined that the conditions of the immigration bond referenced above have been satisfied and the bond is cancelled. [FSC-B] will issue a refund of any deposit and any interest to the individual or entity identified in U.S. Immigration and Customs Enforcement records entitled to receive the refund, to the address of record. If your address has changed, you should use this form to notify ICE of your new address. If you have

validly appointed someone or some other entity to be your attorney in fact to receive this refund, please inform them that you have received this notification and that they can expect to receive the refund check at the address noted in [FSC-B] records.

Otherwise, you do not need to take any action in response to this notice.

Questions about this form or your deposit should be addressed to the Department of Homeland Security Financial Service Center-Burlington, P.O. Box 5000, Williston, VT 05495-5000, or bondrefund.helpdesk@ice.dhs.gov.

13. Once a Cancellation Notice is issued, notification is provided to FSC-B to conduct a review of the cash bond cancellation and, where appropriate, authorize the reimbursement of cash bond amounts (plus statutory interest) back to the obligor.

**ICE's Search For Open Cash Bonds After The Filing Of The Complaint In This Matter**

14. There was an exponential rise in pending immigration proceedings between 2020 (approximately 1.5 million) and 2024 (approximately 3.9 million). *See* https://www.justice.gov/eoir/media/1344791/dl?inline (last visited March 17, 2026). Given the proliferation in pending immigration matters, ICE was not able to keep up with all of the concomitant administrative tasks that arose and, as a result, a backlog formed of cases in which a number of cash bonds may have been subject to cancellation but were not cancelled and, accordingly, reimbursements were not issued to obligors (the "Backlog").

15. After the Complaint was filed in the above-captioned action in October 2024, ICE initiated an effort to clear the Backlog.

16. As of December 2024, ICE maintained approximately 200,000 open cash bonds (without date restriction). Information relating to the number of open cash bonds held by ICE is maintained by the Bond Management Information System ("BMIS"). BMIS is an immigration bond management database used primarily by ICE's Office of Financial Management ("OFM").

To determine the number of open cash bonds, a search can be conducted in BMIS using the parameters "Bond Status—Open or Posted" and "Bond Payment Type Code—C" (*i.e.*, cash bond).

17.     Since not all open cash bonds are subject to cancellation, it was necessary to determine how many of the then open cash bonds may have been subject to cancellation, which would help define the volume of the Backlog.

**ICE's Search For Open Cash Bonds Subject To Possible Cancellation**

18.     ICE's BMU determined that the best methodology to determine which open cash bonds may be subject to cancellation would be through the application of search terms based on common or default terminology used within the U.S. Immigration Court system, and developed the following list of terms that would provide a list of cases where an immigration proceeding has been dismissed, terminated, or other relief has been granted:

- Immigration Judge Decision of:
    - "Relief Granted"
    - "Dismissed by IJ"
    - "Terminated"
    - "Terminate"
    - "Grant"
- Immigration Judge Decision other:
    - "Administrative Closing – Other"
    - "Prosecutorial Discretion ? Admin Close"
    - "In Court Prosecutorial Discretion - Admin Closure"
    - "Failure to Prosecute (DHS cases only)"
    - "Prosecutorial Discretion – Admin Close"
- Board of Immigration Appeals Decision of:
    - "Administratively Closed"
    - "Dismiss Soriano"
    - "Terminate-DHS PD"
    - "SUMMARY AFFIRMANCE/VD"
    - "Temporary Protected Status"
    - "Administratively Closed-DHS PD"
    - "Termination"
    - "Deferred Enforced Departure"
    - "Granted"
    - "Withdrawal-DHS PD"

19.    In or around December 2024, ICE applied these search terms described in paragraph 18 above to "Databricks" without date restrictions.  Databricks is an analytics platform application that operates through a web interface and can be used to search and analyze data from various sources, including but not limited to data from the Executive Office of Immigration Review System[1] ("EOIR") and the Board of Immigration Appeals ("BIA").

20.    This search produced a list of approximately 21,000 open cash immigration bonds with potential cancellation events. This list is a subset of the approximately 200,000 open cash bonds described in paragraph 16 above.

21.    The 21,000 identified bonds could not just all be cancelled because the list generated was overinclusive. As discussed above, ERO typically reviews cash bonds on an individualized, case-by-case basis to determine if a bond is subject to cancellation. Indeed, while there are instances where a bond might appear to be subject to cancellation, the circumstances of a case demonstrate that the bond remain open. The ERO individualized review process is a time-consuming process, but necessary to ensure that—amongst other things—active bonds on active cases are not unintentionally canceled, which could result in negative consequences, including the unintended detention of an alien or the loss of an effective enforcement tool for ERO officers. Therefore, the list of the identified approximately 21,000 cash bonds was split and disseminated among approximately twenty-five (25) ERO field offices for an individualized review of each case to determine the propriety of each bond cancellation.

22.    In order to determine if the identified cash bonds could be cancelled, ERO employees had to locate and review each of the approximately 21,000 individual case files,

---

[1]    EOIR is a sub-agency of the United States Department of Justice whose chief function is to conduct removal proceedings in immigration courts and adjudicate appeals arising from the proceedings.

relevant detention and departure records, and the applicable Immigration Court orders, to determine if a cancelable event actually occurred.

23.     Between January 2025 and May 2025, significant progress was made by the ERO field offices in conducting this individualized review of the approximately 21,000 cases identified in paragraph 20 described above.  However, notwithstanding the progress, in May 2025, ICE determined that the initial search terms for Immigration Court orders were too broad and were yielding too many false positives.

24.     As a result, in or around May 2025, ICE's BMU modified the search terms in the following ways:  (i) removed the search term "grant" when there was a motion to reopen granted (*i.e.*, a cash bond would not be subject to cancellation in these circumstances because immigration proceedings are still pending); (ii) removed records where the BIA date was not null and the BIA Decision is null (*i.e.*, because if the date was null then the immigration proceedings were still pending before the BIA); and (iii) removed orders of supervision from the bond type (*i.e.*, because the terms of the alien's release remain in effect and subject to the terms of the posted cash bond).

25.     In or around May 2025, ICE applied the search terms described in paragraph 18 above, as modified by the parameters in paragraph 24 above, to Databricks without date restrictions.

26.     This May 2025 search produced a revised list of approximately 5,000 open cash immigration bonds with potential cancellation events.  This list included previously identified open cash bonds from the original search that had not yet been reviewed by ERO.

27.     Between January 2025 and November 2025, the ERO field offices completed this individualized review. Of the cash bonds reviewed, approximately 95% were cancelled. The approximately 5% that were not cancelled involved circumstances where a bond cancellation event

might be perceived to have occurred, but the bond is still not cancellable because, for example, a decision was issued that may be subject to further proceedings/appeal or administrative closure, or proceedings are otherwise on hold until re-calendared by either party or the court.

28.     As bonds were cancelled by ERO on a rolling basis, FSC-B received notification for further review and, if appropriate, for reimbursement of the cash bond plus statutory interest.

29.     ICE does not track how many cash bonds are/were cancelled by category/cancellation event in the ordinary course of business. To compile this information would require a lengthy review of hundreds of thousands of matters involving historically cancelled bonds and a re-review of the bonds reviewed and cancelled since the filing of the Complaint in this matter.

Pursuant to 28 U.S.C. § 1746, I, PATRICK H. ELLIOTT, hereby declare under penalty of perjury that the foregoing is true and correct.

Date:  March 19, 2026
         Kansas City, Missouri

P 7332 ELLIOTT  Digitally signed by PATRICK H ELLIOTT
Date: 2026.03.19 17:04:22 -05'00'

_____

PATRICK H. ELLIOTT
Section Chief, National Bond and Case Management Unit
Bond Management Unit
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security