UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DOUGLAS CORTEZ, on behalf of himself
and all others similarly situated,

        Plaintiff,

    -against-

UNITED STATES OF AMERICA,

        Defendant.

Case No. 2:24-cv-7532 (JMA)(ARL)

## <u>DECLARATION OF JOHN MONETTE</u>

Pursuant to 28 U.S.C. § 1746, I, John Monette, hereby declare under penalty of perjury that the following is true and correct:

1.    I have been employed by Immigration and Customs Enforcement ("ICE"), a component within the U.S. Department of Homeland Security ("DHS"), since 2007 as an accountant, and since 2018 as the Branch Chief within the Office of the Chief Financial Officer ("OCFO") of the Office of Financial Management ("OFM"), located at the ICE Financial Service Center-Burlington ("FSC-B") in Williston, Vermont.

2.    My prior duties as an accountant involved overseeing audit services, overseeing financial services relating specifically to accounts receivable, and overseeing financial services relating specifically to cash management. In my current position as Branch Chief, I supervise the operations of the Revenue Management Branch OFM. Among other duties, my office manages the financial aspects of the bond process, including the reimbursement of the proceeds of cash bonds held by ICE.

3.      I submit this declaration to explain FSC-B's bond reimbursement process and to respond to certain inquiries related thereto that have been raised in a January 16, 2026 letter from Plaintiff's counsel in the above-captioned matter.

4.      The statements contained in this Declaration are based upon my personal knowledge and experience, my review of hardcopy and electronic records, systems, and databases maintained by DHS in the ordinary course of business, information provided to me in my official capacity and in the performance of my official duties, consultation with my colleagues, and upon conclusions and determinations made in accordance therewith.

**ICE Fiscal Service Center – Bond Cancellation Process**

5.      OFM's role in canceling cash immigration bonds begins once an ICE Enforcement and Removal Operations ("ERO") employee issues a Form I-391 Notice – Immigration Bond Cancelled ("Cancellation Notice").

6.      Upon receiving notification of the issuance of a cash bond's Cancellation Notice, FSC-B staff used to perform up to three levels of review before a payment request is made to the U.S. Department of the Treasury ("Treasury") to reimburse the bond obligor the correct amount of the bond plus statutorily defined interest.

7.      Prior to October 29, 2024 (which I understand is the date the complaint was filed in this matter) FSC-B staff reviewed and certified canceled cash bonds according to the following general procedure:

a.      At the first level of review, a FSC-B staff member reviewed the bond file to ensure that it contains all necessary paperwork and signatures, and if proper, cancelled the bond in the Bond Management Information System ("BMIS"), an immigration bond management database;

2

b. At the second level of review, a FSC-B staff member reviewed BMIS, bond documentation, and/or obligor correspondence to ensure consistency of the information therein (*i.e.* a matching name, address, relevant dates, bond type, signatures, and payee information); and

c. At the third level of review, a qualified Certifying Officer ("CO"), conducted a final review of all the bond paperwork to certify the issuance of payment. This requires a careful review because, pursuant to 31 U.S.C. § 3528, a CO may be personally liable for inaccurately certifying documents for the issuance of a payment.

8. Once these levels of review were completed, payment authorization was provided to Treasury who, in my experience, issues a check to be mailed to the address provided by the obligor within about a week. However, it is my understanding that if the obligor owes certain qualifying debts to the federal government, all or part of the bond refund amount may be held to help pay off any debt, in accordance with the Treasury's Offset Program pursuant to 31 U.S.C. § 3716, and that this may delay the issuance from Treasury of a check to an obligor.

9. Prior to October 29, 2024, the above referenced review process and the processing of bond cancellation payments could take up to twenty (20) weeks so long as no issues came up during the bond review process.

10. To handle the influx of Cancellation Notice notifications received by FSC-B from ERO since the filing of the complaint in the above-referenced matter, FSC-B temporarily increased staffing to assist with completing the necessary levels of review.

11. In addition, FSC-B also combined the responsibilities of the first and second levels of the longstanding three-level review process, *see* ¶¶ 7(a)-(b), resulting in a more efficient two-level review process to certify payments.

3

12.    Between approximately January 2025 and November 2025, ERO cancelled approximately 20,952 bonds that were determined to comprise a backlog.  Of those cancelled bonds, FSC-B certified approximately 20,706 for reimbursement. Of those certified bonds, approximately 2,317 reimbursements were returned as undeliverable. Because uncashed checks are not voided by Treasury until 12 months after originally sent, ICE currently cannot determine how many mailed checks were actually cashed or uncashed by the obligors.

13.    In instances where a bond is cancelled and the refund issued by ICE is returned as undeliverable, those funds are deposited into a government wide account containing funds that are unable to be returned immediately to individuals/entities due to, among other things, incomplete payment/banking information, change of address, death of a payee, or incomplete information provided to the government that results in the government not being able to locate owners/heirs to provide a payment/refund. When an obligor contacts ICE to inquire about returned funds, he or she will be asked to update the contact/payment information on file, and the refund will be re-sent accordingly. When bond reimbursements are returned, ICE may also proactively attempt to locate an obligor using provided obligor/family/representative phone numbers. In addition, since approximately August 2025, ICE began collaborating with a third-party database provider to identify updated contact information/mailing addresses to locate bond obligors and, when it is able to do so, re-issue returned bond reimbursements. Using this technology, as of March 12, 2026, approximately 326 cash bonds (valuing $2,315,149.86) have been reimbursed to obligors whose original checks were returned as undeliverable. ICE does not track statistics that identify all the different sources or percentages of funds in the government wide unclaimed funds account.

4

I hereby declare under the penalty of perjury that the above statements are true and correct.

Executed at Milton, Vermont
this 20th day of March, 2026.

JOHN P MONETTE

Digitally signed by JOHN P
MONETTE
Date: 2026.03.20 12:17:32 -04'00'

John Monette
Branch Chief, Office of Financial Management
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security