

www.motleyrice.com

"I will stand for my client's rights.
I am a trial lawyer."
–Ron Motley (1944–2013)

800 Third Ave., Suite 2401
New York, NY 10022
**o.** 212.577.0052  **f.** 212.577.0054

**F. Franklin Amanat**
*Licensed in NY, NJ, DC, CT*
direct:  212.577.0052
famanat@motleyrice.com

March 25, 2026

<u>BY ECF ONLY</u>

Honorable Joan M. Azrack
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

> *Re*:     *Cortez v. United States*, No. 2:24-CV-7532 (JMA/ARL)

Dear Judge Azrack:

This case was filed over 16 months ago. ECF 1. To date, however, there has been no discovery and no motion practice. Instead, ICE has repeatedly asked to delay this case so that it can purportedly resolve this litigation on its own. To be sure, in response to this litigation, ICE has taken steps to repay some individuals whose bonds the agency had improperly failed to refund. But over the course of many months; numerous letters to the court, ECF 31, 33, 42, 43, 44, 47; and multiple status conferences, ECF 36, 45; ICE continues to fail to provide basic information about the steps it has (and has not) taken. ICE has failed to do so despite being given multiple opportunities by this Court, and despite repeated prompting by both the Court and the plaintiffs. This litigation has been delayed long enough. This case should now proceed to discovery.

**1.** In a July 17, 2025, letter, ICE admitted that for years it had systematically failed to reimburse thousands of individuals who put up hard-earned money to keep loved ones and community members out of immigration detention. *See* ECF 31 at 3. However, ICE asked to delay this litigation on the grounds that it had identified approximately 21,000 so-called "Backlog Cases" and had been "working diligently to clear the Backlog Cases." *Id.* In response, the plaintiffs pointed out that ICE had not provided enough information to evaluate its efforts and that ICE had failed to address questions the plaintiffs had sent ICE a month before about the steps it was taking. ECF 33 at 2. The plaintiffs also explained that that there were several key legal violations in the complaint that ICE did not even purport to remedy. *Id.* At a status conference on July 22, 2025, the Court gave ICE additional time "to address the backlog of cash bonds identified in Plaintiff's complaint" and expressed hope that this could address the concerns identified. July 22, 2025, Minute Order.

**2.** Five months later, in a January 5, 2026, letter, ICE stated that "over the last year ICE has been working diligently to clear the Backlog Cases" and asserted that the plaintiffs' claims were now moot. ECF 42 at 3. When the plaintiffs pointed out that ICE no longer even identified the number of Backlog Cases, ECF 43 at 1, ICE submitted a follow-up letter stating that the "Backlog Cases" consisted of "approximately 21,000 cases," ECF 44 at 1.



The plaintiffs also noted other important deficiencies in the January 5 letter, which ICE did not address in its follow-up letter. ECF 43 at 1–2. The systematic legal violations identified in the complaint included three key problems: (1) failure to cancel bonds that were eligible for cancellation; (2) bonds that had been cancelled but that ICE improperly failed to reimburse based on unnecessary paperwork that wasn't required by the bond contracts; and (3) bonds that had been cancelled but not reimbursed because of a lack of sufficient notice to the obligors. ECF 1 ¶¶ 10, 20. ICE's January 5 letter had not provided information sufficient to evaluate the thoroughness of its efforts as to bonds that had not yet been cancelled. ECF 43 at 1–2. And ICE had failed entirely to address the latter two issues—unnecessary paperwork and lack of notice. *Id.*

The Court held another status conference on January 7, 2026. The Court recognized that ICE had failed to provide sufficient information to evaluate its efforts. To ensure that ICE would provide sufficient information, the Court instructed the plaintiffs to provide inquiries in writing to ICE. ECF 45. In response, ICE would then provide another status update. *Id.* The plaintiffs sent ICE their inquiries on January 16, which are attached here as Exhibit A. These inquiries overlapped with questions the plaintiffs had sent ICE back in June 2025, but the agency had left unanswered.

**3.** On March 20, 2026, ICE provided yet another status report, this time attaching two declarations by ICE officials. These declarations contain information inconsistent with ICE's prior descriptions of the steps it has taken and once again fail to even address some of the plaintiffs' key concerns. These deficiencies include, but are certainly not limited to:

- **ICE has revealed that it was not, in fact, reviewing 21,000 Backlog Cases.** In July 2025 and January 2026, ICE told this Court that ICE was "working diligently" to review "21,000 cases in which a cash bond may have been subject to cancellation (the 'Backlog Cases')." ECF 31 at 3; ECF 44 at 1. One of ICE's declarations now reveals that ICE had stopped reviewing those 21,000 cases back in May 2025, before either of those letters to the Court. ECF 47-1 ¶¶ 23–26. Instead, ICE had determined that those 21,000 bonds were "too broad," stopped reviewing them, narrowed its search terms, and then only reviewed a much smaller set of 5,000 bonds. *Id.* ICE does not say whether it ensured that these new search terms were sufficiently inclusive—such as checking whether the new search omitted bonds that had been covered in the initial group and had already been deemed eligible for cancellation. Confusingly, ICE's other declaration states that ICE "cancelled approximately 20,952 bonds that were determined to comprise a backlog" and "certified approximately 20,706 for reimbursement." ECF 47-2 ¶ 12. Given the inconsistency between the declarations, it is entirely unclear whether this number actually represents backlog cases that were cleared or includes a large number of routine bond cancellations that occurred during this time. ICE gives no explanation for this discrepancy, which makes it impossible to evaluate the comprehensiveness of its actions.

- **ICE continues to ignore its unnecessary paperwork violations.** Even though the plaintiffs dedicated a section of their inquiries to this topic, Ex. A ¶¶ 14–20, ICE still won't say whether it has reimbursed individuals whose bonds were previously cancelled but who had not received refunds because of ICE's unnecessary paperwork requirement. Instead, ICE appears to have only reviewed "open cash bonds," ECF 47-1 ¶ 20, which by definition would



exclude bonds that were previously cancelled but not refunded. ICE's own documents estimated that thousands of individuals fell into this group. Ex. A ¶ 16.

- **ICE has insufficiently addressed notice violations.** The plaintiffs' inquiries also covered the complaint's allegations regarding insufficient notice of cancellation. Ex. A ¶¶ 21–24. ICE admits that over 2,300 of the cancelled backlog bonds (approximately 11%) were returned as undeliverable and that "ICE currently cannot determine" how many more bonds weren't returned but did not reach the obligor and will go uncashed. ECF 47-2 ¶ 12. These numbers indicate significant problems with ensuring individuals receive the money they are owed. ICE now asserts that it recently began working with a third party to address this, but ICE does not say whether this process is complete, and by its own reporting it has only resolved a fraction of the cases. *Id.* ¶ 13. Nor does ICE say whether it is seeking to locate obligors *only* as to the Backlog Cases, or whether it is taking similar efforts for the many other bonds that are sitting in ICE's unclaimed funds account. This litigation covers both.

- **ICE fails to address the millions of dollars of unreimbursed bonds.** As the plaintiffs have noted from the outset, the Department of Homeland Security has hundreds of millions of dollars in an unclaimed funds account with the U.S. Treasury Department, much of which consists of bonds that were cancelled but not refunded. ECF 1 ¶ 11. Given ICE's past policies of systematically requiring unnecessary paperwork and failing to provide adequate notice, this indicates that a large number of bonds are unlawfully going unrefunded. In the past, ICE tried to explain away the vast amount of money in this fund on the grounds that it came from various sources besides unclaimed bonds. The plaintiffs therefore inquired as to how many bonds remain cancelled but unpaid, how much money that represents, where those funds are currently stored, and the sources of funds in the Treasury account. Ex. A ¶¶ 12–13. ICE's only response is that it doesn't know about the composition of the Treasury account and "does not track statistics" about it. ECF 47-2 ¶ 13. It is implausible that ICE doesn't have records of the amount of bond money it has transferred to the Treasury account, as it made those transfers itself. And in any event, ICE has identified no other significant source of monies in that account.

ICE's drip-by-drip approach to providing information has extensively delayed this case. Despite multiple efforts from this Court and the plaintiffs to obtain sufficient information to evaluate ICE's efforts to address the plaintiffs' claims, ICE continues to come up short. As to some key issues, ICE continues to fail to address them at all. As to others, ICE's information is incomplete and at times inconsistent.

Given these inconsistences, inadequacies, and omissions, ICE simply has not shown that it has fully and finally resolved the claims in this litigation. This case should therefore be permitted to move forward. Factual questions about the continuing backlog of ICE bonds will remain relevant to this litigation and can be addressed in due course through discovery. But this litigation should no longer be delayed before it can even begin.[1]

---

[1] In prior status reports—but not in its most recent one—ICE suggested that it planned to move to dismiss this case based on arguments that are inconsistent with recent Supreme Court



We appreciate the Court's time and attention to this matter.

Respectfully submitted,

F. Franklin Amanat
Motley Rice LLC
*Counsel for Plaintiff*

cc (by ECF notification and courtesy email):
　　AUSA Robert W. Schumacher, II
　　AUSA Nicole Zito
　　All counsel of record

---

precedent and the position of the Solicitor General. ECF 33 at 2–3. If ICE wishes to continue pressing this argument, it can file a motion. However, given how long this case has been pending—not to mention the conflict between ICE's view, precedent, and the federal government's position elsewhere—any such motion would not warrant further delaying this case.